**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **GREGORY CONWAY, #N83890,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 16-cv-01393-SMY |
| | ) |
| **LIEUTENANT GOODEN,** | ) |
| **LIEUTENANT PEARCE,** | ) |
| **LIEUTENANT JOHN DOE,** | ) |
| **C/O JOHNSON,** | ) |
| **C/O QURY,** | ) |
| **C/O MYERS,** | ) |
| **C/O ESTES,** | ) |
| **C/O WALLA,** | ) |
| **C/O MERACLE,** | ) |
| **ALAN TRUMMEL,** | ) |
| **HEALTH CARE ADMINISTRATOR** | ) |
| **JOHN DOE, and** | ) |
| **NURSE'S ASSISTANT JANE DOE,** | ) |
| | ) |
| **Defendants.** | ) |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Gregory Conway, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983. (Doc. 1). Plaintiff brings claims against officials at both Western Illinois Correctional Center ("Western Illinois") and Pinckneyville under the First, Eighth, and Fourteenth Amendments. In connection with these claims, Plaintiff names 9 known defendants and 3 unknown "Doe" defendants, one of which has since been identified. Plaintiff requests monetary compensation and a declaratory judgment. (Doc. 1, pp. 30-35). He has since moved for a temporary restraining order and a preliminary injunction requiring him "to be kept separate from Defendants Lieutenant Pearce, Correctional

1

Officer Walla, Correctional Officer Meracle [and] Correctional Officer Estes" and ordering Plaintiff's transfer to a different correctional institution "as soon as possible." (Doc. 10, p. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. Consistent with *George*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

*Western Illinois*

According to the Complaint, Plaintiff was sexually assaulted by a Western Illinois corrections officer who is not identified as a defendant in this action. When Plaintiff reported the assault, the Western Illinois staff "began engaging in acts of retaliation." (Doc. 1, pp. 6-7). Defendant Qury allegedly conducted an internal affairs investigation after Plaintiff was attacked by his cellmate on April 13, 2015. (Doc. 1, pp. 7-8). During his interview with Plaintiff, Qury called Plaintiff a troublemaker. Qury made it clear that he was referring to "all the grievances" Plaintiff filed to complain about the corrections officer who allegedly sexually assaulted him and

not the fighting for which Plaintiff was under investigation. *Id.* Qury asked Plaintiff: "Do you really want to go down this road? Keep it up I guarantee your [*sic*] going to lose, because once your [*sic*] labeled a trouble maker its [*sic*] all downhill from there." (Doc. 1, p. 8).

Although Plaintiff and his cellmate were both punished for fighting, Plaintiff was given 90 days of segregation and a disciplinary transfer while his cellmate received only 30 days in segregation for the same offense. *Id.* Plaintiff claims this was an act of retaliation by Qury. (Doc. 1, pp. 8-9). Plaintiff also claims that his medically prescribed eyeglasses were taken away from him at Western Illinois "as retaliation," and that he was forced to live in inhumane living conditions for 38 days before being transferred. (Doc. 1, p. 9).

Plaintiff further alleges that while he was getting on the transfer bus at Western Illinois on May 21, 2015, Defendant Gooden said to him: "I hope you don't think your [*sic*] getting away do you? Trouble-maker because something is waiting on you. . . . Grievances are not going to help you." (Doc. 1, pp. 9-10). Gooden then told Defendant Johnson: "This is inmate Conway here[.] [H]e is a trouble-maker[.] [Y]ou guys show him how we deal with trouble makers." (Doc. 1, p. 10). In response, Johnson allegedly told Plaintiff that "we got a way of dealing with trouble-makers at Pinckneyville." (Doc. 1, p. 11). Plaintiff claims that these statements by Gooden constitute acts of retaliation. (Doc. 1, p. 10).

*Pinckneyville*

After his arrival at Pinckneyville, "Plaintiff was written a disciplinary report for Dangerous Disturbance and Disobeying a Direct Order by C/O Johnson." (Doc. 1, p. 11). Plaintiff claims that both of these charges were false and were issued in retaliation for Plaintiff's grievances and sexual assault allegations at Western Illinois. *Id.* When Plaintiff received the disciplinary report on May 22, 2015, he sought to include several inmates as witnesses at his

adjustment committee hearing by writing their names and inmate numbers on the relevant form. (Doc. 1, pp. 12-13).

When he was called to the adjustment committee for a hearing on May 24, 2015, the hearing officers, Defendants Lieutenant John Doe and Myers, refused to call the witnesses, claiming it was too late. (Doc. 1, pp. 13-14). Lieutenant John Doe then allegedly said: "Their [*sic*] right you are a trouble-maker. Guilty as charged now get out of here." (Doc. 1, p. 14). Plaintiff received 30 days in segregation for these allegedly fabricated charges. (Doc. 1, p. 12). Plaintiff alleges these acts by Lieutenant John Doe and Myers were retaliatory and violated Plaintiff's due process rights. (Doc. 1, p. 14).

From May 28, 2015 until July 29, 2015, Plaintiff sent 8 request slips to Defendant Brummel, an eye doctor, for his medically prescribed eyeglasses. (Doc. 1, pp. 15-16). Brummel ignored the requests. Plaintiff alleges that Brummel acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when he disregarded Plaintiff's need for eyeglasses. (Doc. 1, p. 16).

On July 14, 2015, Plaintiff was allegedly attacked, punched in the head and face and stabbed in the neck, chest, back, arm, and leg by his mentally unstable cellmate. Prior to the attack, Plaintiff told Defendant Estes that his cellmate "was constantly threatening to kill" him. (Doc. 1, pp. 16-17, 23). On the day of the attack, Plaintiff told Estes that his cellmate had brandished an object that looked like a knife and told Plaintiff he planned to kill him that day. *Id*. In response, Estes mocked Plaintiff, saying "[t]he Trouble-Maker needs help, write a grievance." (Doc. 1, pp. 17-18).

Plaintiff also told Defendant Pearce of his cellmate's threats and weapon. Before walking away, Pearce stated: "The big bad trouble-maker is not worried about this little crazy

4

guy is [*sic*] you? You should've thought about that before you started slinging all that ink all over those grievances." (Doc. 1, p. 19). Plaintiff also claims he repeatedly told Defendants Walla and Meracle that his cellmate was suffering from mental illness and "was constantly threatening to kill the Plaintiff." (Doc. 1, p. 21). According to Plaintiff, in response Walla would typically say something akin to "we don't help trouble-makers." *Id.* Similarly, Meracle would call him a trouble-maker and "make an obscene comment then walk away." (Doc. 1, p. 22). Plaintiff claims these actions by Estes, Pearce, Walla and Meracle were taken in retaliation and demonstrated deliberate indifference to Plaintiff's personal health and safety. (Doc. 1, pp. 18-23).

Plaintiff was seen by Defendant Assistant Nurse Jane Doe on the day of the attack and given some ointment for his stab wounds. (Doc. 1, pp. 23-24, 25-26). Assistant Nurse Jane Doe then "tried to render medical services she [wa]s unqualified to give" and "never followed the procedures required for the Plaintiff to receive the correct examination and treatment." Plaintiff maintains that this constitutes deliberate indifference. (Doc. 1, pp. 25-26).

Plaintiff was also informed that he would be called the next day to see a doctor. (Doc. 1, p. 26). Despite his swollen face, blackened and bruised eyes, swollen lip, severe migraine, body soreness, dizzy spells, "mental and physical trauma" and "constantly bleeding" stab wound, Plaintiff was not seen by a doctor as promised. (Doc. 1, pp. 24, 26). Plaintiff submitted request slips to see a doctor for 11 days straight after the attack and was denied all treatment. *Id.*

According to the Complaint, Defendant Pinckneyville Correctional Center Healthcare Administrator John Doe exhibits deliberate indifference to prisoners' serious medical needs by allowing "systemic deficiencies in staffing or procedures" to make "unnecessary suffering happen." (Doc. 1, p. 25). Plaintiff also alleges that, under Health Care Administrator John Doe,

"prisoners are unable to make their medical problems known to medical staff" and that"[d]isorganization and dysfunction in a medical program can amount to deliberate indifference if it prevents prisoners from receiving necessary care." *Id.*

Plaintiff now claims that "[a]ll the defendants except for Eye Doctor Alan Trummel, Nurses Assistant Jane Doe and Health Care Administrator John Doe referred to the Plaintiff as a 'Trouble-Maker' before they engaged in violations of the Plaintiff's constitutional rights." (Doc. 1, pp. 26-27). He was never referred to in this manner until Qury conducted the Internal Affairs investigation into the fight Plaintiff had with his cellmate at Western Illinois. *Id.* This is allegedly evidence that the defendants were "engaging in a conspiracy to inflict punishment on [him] for being sexually assaulted . . . and writing grievances." *Id.* This "campaign of harassment" has allegedly "lasted for two years and continues to this day." (Doc. 1, p. 28).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** First Amendment retaliation claim against Qury for giving Plaintiff 90 days in segregation, at which time his eye glasses were taken away, and giving him a disciplinary transfer in retaliation for reporting his sexual assault by a Western Illinois corrections officer and filing grievances to complain about the same;

**Count 2:** Fourteenth Amendment equal protection claim against Qury for giving Plaintiff 90 days in segregation and a disciplinary transfer and giving his cellmate only 30 days in segregation for the same rule violation in April 2015;

**Count 3:** Eighth Amendment conditions of confinement claim against Qury for subjecting Plaintiff to unconstitutional conditions of confinement for 38 days before Plaintiff's transfer from Western

Illinois;

**Count 4:** First Amendment retaliation claim against Gooden for threatening Plaintiff and instructing Johnson to show Plaintiff how trouble makers are handled;

**Count 5:** First Amendment retaliation claims against Johnson, Myers, and Lieutenant John Doe for Johnson filing false disciplinary charges against Plaintiff on May 22, 2015 and Myers and Lieutenant John Doe refusing to allow Plaintiff to call witnesses at the hearing on those charges and ultimately giving Plaintiff 30 days in segregation in retaliation for the sexual assault Plaintiff reported and grievances he filed at Western Illinois;

**Count 6**: Fourteenth Amendment due process claims against Johnson, Myers, and Lieutenant John Doe for Johnson filing false disciplinary charges against Plaintiff on May 22, 2015 and Myers and Lieutenant John Doe refusing to allow Plaintiff to call witnesses at the hearing on those charges and ultimately giving Plaintiff 30 days in segregation;

**Count 7:** Eighth Amendment failure to protect claim against Estes, Pearce, Walla, and Meracle for failing to protect Plaintiff from an attack by his cellmate on July 14, 2015 after Plaintiff told them that his cellmate had threatened his life and brandished a knife-like weapon at him;

**Count 8:** First Amendment retaliation claim against Estes, Pearce, Walla, and Meracle for failing to protect Plaintiff from his cellmate because he reported a sexual assault at Western Illinois and filed grievances;

**Count 9:** Eighth Amendment deliberate indifference to medical needs claim against Assistant Nurse Jane Doe for attempting to render medical services she was unqualified to provide and failing to follow proper examination procedures following Plaintiff's attack by his cellmate on July 14, 2015;

**Count 10:** Eighth Amendment deliberate indifference to medical needs claim against Health Care Administrator John Doe for allowing disorganization and dysfunction in the medical program at Pinckneyville that resulted in Plaintiff's denial of medical care by a doctor for the serious injuries he sustained during the cellmate attack on July 14, 2015;

**Count 11:** Conspiracy to violate Plaintiff's constitutional rights under the

>First, Eighth, and Fourteenth Amendments in retaliation for his reporting of a sexual assault at Western Illinois and writing grievances;

>**Count 12:** Eighth Amendment deliberate indifference to medical needs claim against Brummel for failing to provide Plaintiff with his medically prescribed eyeglasses after Plaintiff requested them 8 separate times between May 28, 2015 and July 29, 2015.

Plaintiff has brought several distinct sets of claims against different defendants. These claims do not belong together in a single action. Therefore, the Court will exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607. Plaintiff's attempt to characterize the defendants' conduct as a conspiracy (Count 11) does not allow him to escape severance. Civil conspiracy claims are cognizable under 42 U.S.C. § 1983. *See*, *e.g.*, *Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002). However, a conspiracy only exists if there is both "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Moreover, "[a] party may not cry 'conspiracy' and throw himself on the jury's mercy." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 436 (7th Cir. 1986).

Plaintiff maintains that "all of the named Defendants was [*sic*] actively engaging in a conspiracy to inflict punishment on the Plaintiff" and "subjected the Plaintiff to a campaign of harassment" because he reported being sexually assaulted and filed grievances to complain about his mistreatment at Western Illinois. (Doc. 1, pp. 30-32). This allegation of a conspiracy is conclusory. Plaintiff has failed to allege any facts suggesting that various defendants at Pinckneyville were even aware of Plaintiff's sexual assault allegations, the protected First Amendment activity that Plaintiff alleges inspired the conspiracy to retaliate against him. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545,

8

551 (7th Cir. 2008)). Further, the fact that officials at Western Illinois and Pinckneyville referred to Plaintiff as a "trouble maker" is not sufficient proof of a conspiracy. *See Vermillion v. Levenhagen*, 604 Fed. App'x 508, 512 (7th Cir. 2015) (lower court's dismissal at threshold of Plaintiff's assertion that many corrections employees from two different facilities engaged in a "broad conspiracy to retaliate" against Plaintiff "readily" agreed with by appeals court). The alleged fact that Pearce made a comment to Plaintiff about previously written grievances in conjunction with failing to protect him from his cellmate in July 2015 similarly is insufficient to implicate him in a retaliatory conspiracy with Western Illinois corrections officers, who had last seen Plaintiff in May 2015.

Moreover, because all Defendants in this case work for the Illinois Department of Corrections, Plaintiff's conspiracy claim runs afoul of the doctrine of intracorporate immunity, which holds that, as a matter of law, the members of a single entity cannot conspire with one another. *See Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Doe v. Board of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1381–82 (N.D. Ill. 1993). Therefore, Count 11, constituting Plaintiff's claim against all defendants for a conspiratorial campaign of retaliation, will not be allowed to proceed and will be dismissed.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims from Western Illinois, Counts 1, 2, 3, and 4, into a separate action, Counts 5 and 6, relating to the allegedly false disciplinary tickets issued to Plaintiff and the related due process issues, into another separate action and Count 12, relating to Brummel's failure to address Plaintiff's medical need for prescription eye-glasses, into yet another action. These separate actions, for Counts 1 through 4, Counts 5 and 6, and Count 12, will have newly assigned

case numbers, and they shall be assessed filing fees. The severed cases shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

Counts 7 through 10 shall remain in this action. A separate order will be issued in this case to review the merits of these claims. Plaintiff will be provided with a copy of the merits order as soon as it is entered. No service shall be ordered on any defendant at this time.

To the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Further, any claims not addressed herein should be considered dismissed without prejudice from this action.

## **Temporary Restraining Order / Injunctive Relief**

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff has filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10), requesting separation from Defendants Pearce, Walla, Meracle and Estes, as well as a prison transfer. (Doc, 10, p. 1). In support of this request, Plaintiff describes conduct of the defendants that occurred long ago or conduct that exceeds the scope of the Complaint. For example, Plaintiff realleges his complaints regarding the retaliation taken against him at Western Illinois for his allegations of sexual assault, Johnson's fabricated disciplinary tickets, Myers and Lieutenant John Doe's due process violations, Pearce, Walla, Meracle and Estes' failure to protect him from his cellmate and Pinckneyville medical staff ignoring his medical needs. (Doc. 10-1, pp. 2-10). All of these events took place between April and July 2015.

He also complains of more recent incidents that are not included in the Complaint and/or arise from the misconduct of nonparties. Plaintiff claims that he was moved 27 different times in 18 months (no specified defendant), that he was charged with fighting when he was punched in the face by another inmate (no specified defendant) and that he was charged with assault and placed in segregation by Lieutenant Baker (a non-party) in December 2016 after pressing the panic button when he received threats from another inmate. (Doc 10-1, pp. 10-12). He also alleges that Pearce "resulted to torture" when he was present at Plaintiff's interview with an internal affairs officer on January 1, 2017 and told Plaintiff to sign a declaration prepared by the internal affairs officer that plaintiff alleges had "something totally different from what [Plaintiff]

told him." (Doc. 10-1, pp. 13-14). In this altercation, Plaintiff claims the internal affairs officer also yelled at him to sign the declaration and hand-cuffed him very tightly, threatening to break his wrist. (Doc. 10-1, pp. 14-15). In his motion, Plaintiff claims that "all the acts of retaliation and the harassment" against him have caused him to "slip back into depression" that mental health worker Ms. Mason (a non-party) allegedly told him on January 15, 2017 she could not help him with. (Doc. 10-1, pp. 15-16).

Plaintiff has not demonstrated that he faces any immediate or irreparable injury or loss that warrants this drastic form of relief. *See* FED. R. CIV. P. 65(b)(1)(A). Further, the Court cannot conclude that Plaintiff is likely to succeed on the merits of any claims, as most of the complaints in his motion arise from incidents that are not addressed in the Complaint, and the Court will not allow Plaintiff's motion to amend his Complaint as it does not accept piecemeal amendments to a complaint. Further, all of the complaints in the motion that took place within the past year are not addressed in the Complaint, and only one of them, the internal affairs altercation, involves an actual defendant in this case (Pearce). If Plaintiff intends to amend his Complaint to include his allegations against this defendant, as appears to be his intent, he has leave to do so in this case (No. 16-cv-1393-SMY), though he must comply with the deadline and instructions set forth in the below disposition.

Plaintiff has put forth insufficient allegations in support of his request for injunctive relief. Should his situation change during the pending action, necessitating emergency intervention by the Court, he may file a new motion for TRO and/or preliminary injunction pursuant to Rule 65(a)-(b). At this time, the motion shall be denied without prejudice.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is hereby **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Here, Plaintiff alleges that he "mailed letters to several law firms" but that his requests for assistance were all denied. (Doc. 3, p. 1). However, he did not attach copies of these letters nor did he attach the responses he claims to have received from the unnamed law firms. Therefore, this Court has little information with which to determine whether Plaintiff's efforts to obtain counsel were indeed reasonable. Regardless of whether his efforts were reasonable,

Plaintiff has demonstrated his ability to proceed *pro se* at this time. He has articulated his claims well, is a college graduate, and has not alleged that he has any language or other barriers to litigating his claims. (Doc. 3, p. 2). Though this Court is denying Plaintiff's motion (Doc. 3) at this time, it will remain open to the appointment of counsel in this case if the need arises in the future.

Plaintiff has filed a Motion for Service of Process at Government Expense (Doc. 4), which is hereby **DENIED** as moot. Because Plaintiff has been granted leave to proceed in forma pauperis, the Court will order service of this suit as a matter of course on all defendants who remain in this action following preliminary review of this matter pursuant to 28 U.S.C. § 1915A.

Plaintiff has filed a Motion to Amend his Complaint (Doc. 6) that is, in effect, a motion to substitute the unidentified defendant Nurse Assistant Jane Doe for Nurse Assistant Kimberly Richardson. Plaintiff's Motion to Amend to substitute these parties is **GRANTED**. The Clerk is **DIRECTED** to substitute Kimberly Richardson for defendant Nurse Assistant Jane Doe in this case.

Plaintiff's Motion for a Temporary Restraining Order (Doc. 10) is hereby **DENIED** without prejudice for the reasons articulated above.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1**, **2**, **3**, and **4,** which are unrelated to the other claims in this action, are **SEVERED** into a new case against **QURY** (Counts 1 through 3) and **GOODEN** (Count 4).

**IT IS FURTHER ORDERED** that **COUNTS 5** and **6**, which are unrelated to the other claims in this action, are **SEVERED** into a new case against **JOHNSON**, **MYERS**, and **LIEUTENANT JOHN DOE**.

   **IT IS FURTHER ORDERED** that **COUNT 11** against all defendants is **DISMISSED** with prejudice as frivolous and/or for failure to state a claim upon which relief can be granted.

   **IT IS FURTHER ORDERED** that **COUNT 12**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **BRUMMEL**.

   The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

   Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[1]  No service shall be ordered in the severed cases until the § 1915A review is completed.

   **IT IS FURTHER ORDERED** that the *only claims remaining in this action are Counts 7 through 10* against **ESTES**, **PEARCE**, **WALLA**, **MERACLE**, **KIMBERLY RICHARDSON** (substituted for Assistant Nurse Jane Doe), and **HEALTH CARE ADMINISTRATOR JOHN DOE**.

   **IT IS FURTHER ORDERED** that Defendants **QURY, GOODEN, JOHNSON**, **MYERS, LIEUTENANT JOHN DOE,** and **BRUMMEL** are **TERMINATED** from **this** action with prejudice.

   **IT IS FURTHER ORDERED** that Plaintiff has leave to amend his Complaint in *this* action, if he wishes to assert any new facts or claims against **ESTES**, **PEARCE**, **WALLA**, **MERACLE**, **KIMBERLY RICHARDSON** (substituted for Assistant Nurse Jane Doe), and **HEALTH CARE ADMINISTRATOR JOHN DOE**. Within 28 days of this Order (**March 2,**

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**2017)**, Plaintiff may file a First Amended Complaint.  He must list *this* case number, *i.e.*, No. 16-cv-01393-SMY, on the first page of each pleading and label the document "First Amended Complaint."  Plaintiff is strongly encouraged to use this District's standard civil rights complaint form when preparing his First Amended Complaint.  Further, Plaintiff should only bring *related* claims against *common* defendants.  Any claims found to be unrelated to one another and/or against different groups of defendants will be severed into one or more new cases at the Court's discretion, and Plaintiff will be assessed a separate filing fee in each case.  If Plaintiff chooses not to file a First Amended Complaint or fails to comply with the deadline and/or instructions set forth in this Order, the Court will screen the remaining counts in the original Complaint pursuant to 28 U.S.C. § 1915A after the expiration of this deadline.  The Clerk is **DIRECTED** to provide Plaintiff with a blank civil rights complaint form for use in preparing the First Amended Complaint.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: February 2, 2017**

s/ STACI M. YANDLE
**U.S. District Judge**